UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| JUSTIN K. MONTEZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:14-CV-1833-TLS |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Justin K. Montez, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income. In May 2011, the Plaintiff protectively filed an application for SSI, alleging disability beginning on February 17, 2011. An ALJ held a hearing in February 2013, at which the Plaintiff, who was represented by an attorney, the Plaintiff's mother, and a vocational expert (VE) all testified. On March 22, 2013, the ALJ found that the Plaintiff was not disabled. The Plaintiff requested review of the ALJ decision, and on June 27, 2014, the Appeals Council denied the Plaintiff's request for review. On August 25, 2014, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir.1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). He must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4) (i)-(v). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). The Plaintiff was not engaged in SGA, so the ALJ moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's schizoaffective disorder was severe.

At step three, the ALJ concluded that the Plaintiff did not have an impairment, or combination of impairments that meets or medically equals the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Because the Plaintiff's impairment was found not to meet or equal a listed impairment, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ concluded that the Plaintiff had the RFC to perform a full range of work at all exertional levels. However, he found that, due to his nonexertional limitations, the Plaintiff could only perform work involving simple tasks and simple work-related decisions, and only occasional interaction with supervisors, co-workers, and the public.

At the final step of the evaluation, the ALJ determined that, in light of the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform.

The Plaintiff argues three bases for reversal. First, he contends that the ALJ did not follow Social Security regulations in evaluating medical opinion evidence. Second, he argues that the ALJ did not include an assessment of all of his impairments in determining the RFC. His final argument is that substantial evidence did not support the ALJ's finding that his psychotic symptoms strongly correlated to previous drug use.

Under the Commissioner's Rulings and Regulations, the ALJ evaluates medical opinions differently depending on the source. Opinions from the claimant's treating source are entitled to special consideration. In some instances—where the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is "not inconsistent" with other

4

substantial evidence—the ALJ must afford it "controlling weight." SSR 96–8p; 20 C.F.R. § 404.1527(d)(2). Even if the ALJ finds that the treating source opinion is not entitled to controlling weight, he may not simply reject it. SSR 96–2p. Rather, he must evaluate the opinion's weight by looking at the length, nature and extent of the treatment relationship between the plaintiff and the physician; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; whether the doctor is a specialist; and "other factors." 20 C.F.R. § 404.1527(d). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96–2p. Regardless of the weight the ALJ ultimately gives the treating source opinion, he must always "give good reasons" for his decision." 20 C.F.R. § 404.1527(d)(2)).

The Plaintiff complains that the ALJ did not follow this procedure with respect to the opinion of Dr. Mallikarjun Patta, a board certified psychiatrist who treated the Plaintiff on February 17, 2011, until his discharge from Michiana Behavioral Healthcare on March 3, 2011. The Defendant counters that the ALJ was not required to weigh Dr. Patta's opinion because it did not pertain to the relevant period, which according to the Defendant was May 23, 2011—the date the Plaintiff filed his SSI application—to March 22, 2013—the date the ALJ issued his decision. The Defendant arrived at this understanding of the relevant period by focusing on 20 C.F.R. §§ 416.335 and 416.305. These regulations, however, concern the timing of an application for SSI benefits and the benefit eligibility date. Here, the Plaintiff alleged that his onset date was February 17, 2011. If the Plaintiff is correct, the cited regulations simply prevented him from receiving benefits until the month following his May 2011 application date.

5

*See* 20 C.F.R. § 416.335 ("If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month."); 20 C.F.R. § 416.305 (stating that the filing of an application was a prerequisite to becoming eligible to receive benefits). But, in determining whether the Plaintiff in fact had met the "other requirements for eligibility," the ALJ was obligated to develop his "complete medical history for at least 12 months preceding the month" in which he filed his application "unless there [wa]s a reason to believe that development of an earlier period [wa]s necessary" or the Plaintiff indicated that his "disability began less than 12 months before [he] filed [his] application." 20 C.F.R. § 416.912(d). Finding no merit to the Defendant's argument that the ALJ had good reason for ignoring Dr. Patta's opinion, the Court cannot conclude that the ALJ's decision complies with controlling social security regulations for evaluating a medical opinion's weight.

The Plaintiff asserts that the ALJ also committed error when he failed to mention Dr. Joseph Binet, or any of his findings related to the Plaintiff's chronic low back pain and obesity. Although the ALJ did not mention Dr. Binet by name, he referenced his findings when he noted that the Plaintiff "complained of low back pain in June and July of 2011, which was later attributed to [Plaintiff]'s poor posture and for which he underwent physical therapy." (R. 21.) The ALJ also stated that there was no evidence in the record of any significant treatment, or any ongoing complaints, related to the Plaintiff's back. Therefore, he agreed with the state agency physicians that the back condition was non-severe. The Defendant urges the Court to find this discussion adequate, as Dr. Binet did not identify any functional limitations. The Court agrees. While the Plaintiff points to an evaluation that showed he ambulated with an abducted left

6

extremity, had decreased hip and knee flexion, and was considered obese, the Court does not find that the ALJ was required to address each of these findings in light of the lack of functional limitations. Moreover, the ALJ's decision cites to this very evaluation. After citing to the evaluation, the ALJ reasoned, correctly, that there was no evidence in the record of any significant treatment, or any ongoing complaints. The ALJ also explained that he was giving weight to the medical opinions that these evaluation findings did not support a finding that the condition was severe. The Court finds that the ALJ provided a logical bridge between the evidence and the conclusions he reached with regard to Dr. Binet's findings.

Next, the Plaintiff turns to the ALJ's treatment of the opinion provided by Dr. Alan Wax, Ph.D. He complains that the ALJ minimized this consultative examiner's findings because they were based in large part on the Plaintiff's mother's statements, but then did not indicate what weight he gave to the opinion. The ALJ provided the following assessment of Dr. Wax's Psychological Evaluation:

> At the claimant's consultative psychological exam in August 2011, Alan Wax, Ph.D. further diagnosed the claimant with a schizoaffective disorder. Based in large part on the claimant's *mother's* statements, Dr. Wax assigned the claimant a GAF score of 48. Like Dr. Gale, Dr. Wax also observed that the claimant had a flat and rigid affect. However, Dr. Wax also noted that the claimant was alert and cooperative, his speech and thought process appeared to be normal, the claimant repeated 3/3 items immediately and 1/3 items after 5 minutes, the claimant was able to repeat 5 digits forward, he answered all of the simple math calculations correctly, and while he was unable to perform "serial 7 subtractions," he was able to perform "serial 3 subtractions" without errors (Ex. 4F).

(R. 24 (emphasis in original).) The ALJ does not explicitly indicate the weight that he assigned to Dr. Wax's assessment.

The Defendant argues that it was proper for the ALJ to highlight that Dr. Wax's assessment was based in large part on the Plaintiff's mother's statements, and that this is implicit

7

evidence of the weight the ALJ assigned to the opinion. The Defendant describes Dr. Wax's statement as "minimal," because it "only not[ed] that Plaintiff appeared to be in the low-average or high borderline cognitive range; had basic self-care skills, but needed reminders: and performed some, but not many higher level activities of daily living." (Def.'s Mem. 5, ECF No. 20.) Additionally, the Defendant argues that any error was harmless because the ALJ concluded that the Plaintiff was limited to simple tasks and simple work-related decisions, and the Plaintiff "does not identify what further limitations he would have that were not already included in the ALJ's RFC." (*Id.*)

Upon review of the record, the ALJ appears to have selected only portions of Dr. Wax's exam for inclusion in his written decision. This is problematic, as the portions of the mental status exam that were not included were those that were more restrictive, such as the Plaintiff's poor judgment and misunderstanding of the meaning of two popular proverbs. He also failed both trials of six digits in the forward position. And while the Plaintiff's mother provided some of the information Dr. Wax relied upon, the ALJ fails to acknowledge that the Plaintiff himself reported the following: being depressed; experiencing extremes fluctuations in the areas of sleep, appetite, and energy; hearing voices; and, having paranoid delusions of people plotting against him, spying on him, and following him. An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Moreover, the ALJ does not adequately explain why he rejected observations provided by the Plaintiff's mother, with whom the Plaintiff lived. That is, he did not explain why a report based on the mother's observations of the Plaintiff lacked credibility or was otherwise

8

insufficient. The ALJ did state later in his decision that he found the mother's testimony at the hearing to be at odds with the Plaintiff's own statements, and with the observations of the Plaintiff's health care providers. However, he did not identify either the Plaintiff's statement, or the health care provider observations that he was referencing. The ALJ reasoned that the record did not support the level of dependence the Plaintiff's mother indicated that he had on others: "To the contrary, the treatment records from the claimant's therapist indicate that this was a source of frequent conflict in the claimant's development toward greater independence through 2012 and 2013." (R. 26.) However, the only document the ALJ cited to support this finding was a third-party function report completed by the Plaintiff's mother in 2011—not treatment records from the Plaintiff's therapist. Earlier in his decision, the ALJ noted that Dr. Richard Gale was working with the Plaintiff and his mother on finding ways for the Plaintiff to be more independent. There is no indication that Dr. Gale's encouragement in this area was a source of conflict between the Plaintiff and his mother. There is evidence in the record that the Plaintiff's mother did not want him to move back to Texas or California where he would not have family support and had been homeless and abusing drugs, but the ALJ does not explain why such a concern would have suggested an exaggeration of the Plaintiff's functioning. In any event, it is not clear that this is even what the ALJ was referencing.

In rejecting the mother's statements, the ALJ may have been relying on his previous discussion where he precluded the Plaintiff from more complex and detailed work requiring higher levels of decisionmaking and constant interaction with others. In this discussion, the ALJ noted that the Plaintiff's symptoms improved and that he had a temporary job picking up garbage during a festival in the fall of 2011. He also noted that the Plaintiff himself believed he could

9

work, was taking classes to obtain his GED, took care of his personal care, cooked, washed dishes, and spent time regularly with his family. Additionally, shortly after the hearing date, the Plaintiff secured a job at McDonald's working two days per week.

The ALJ does not explain how a job picking up garbage (which was only temporary); washing dishes (that his mother stated had to be re-washed because they were not clean); taking GED classes (which were not held daily); the Plaintiff's perceptions about his personal care abilities (which were refuted by his mother's statement that personal care required prompting and his therapist's finding that the Plaintiff did not have appropriate grooming and personal hygiene); spending time with family members(who are not supervisors, co-workers, or the public who all generally expect and tolerate a different level of behavioral extremes); or any of the other activities he cites relate to the ability to obtain full time employment, or how it undermines the mother's credibility concerning her son's inability to stay on task. Indeed, the ALJ himself found that the Plaintiff had moderate difficulties with regard to concentration, persistence or pace. (*See* R. 22) (relying on the Psychiatric Review Technique of the State agency psychologist, J. Gange, Ph.D.).) Difficulties with regard to concentration, persistence, or pace are among the limitations a vocational expert must consider when being oriented to the totality of a claimant's limitations. *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). And the most efficient way to ensure that the VE is fully apprised of the claimant's limitations is to include all of them directly in the hypothetical, *id.*, which brings the Court to another concern, which undermines the Defendant's harmless error argument.

The hypothetical the ALJ posed to the VE included a work restriction involving simple tasks and simple work-related decisions. These restrictions do not necessarily account for the

Plaintiff's moderate difficulties in concentration, persistence or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner,* 627 F.3d at 620; *see also Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings). "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85–15.

The ALJ did not provide an adequate explanation of the problems he perceived with the statements the Plaintiff's mother made at the hearing or during her third-party assessment, especially given the ALJ's finding that the Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. Nor does the ALJ's decision explain how simply limiting the Plaintiff to simple tasks will address his moderate difficulties with regard to concentration, persistence, or pace. When the ALJ added limitations to the hypothetical that addressed an inability to stick with a given task over a sustained period, the jobs the VE previously identified were eliminated. (R. 68) (asking VE to consider a person who "would need regular prompting and reminders to attend to task or how to perform the task beyond a 30 day time window from supervisors" and would "likely be off task about 12 minutes an hour even when reminded how to perform the tasks assigned" ).) Accordingly, the Court does not agree with the Defendant's argument that any error with respect to the ALJ's assessment of Dr. Wax's opinion was harmless because the ALJ already concluded that the Plaintiff was limited to simple tasks and simple

11

work-related decisions.

Another reason the Plaintiff believes remand is warranted is because the ALJ does not adequately indicate the weight he assigned to the opinion of Dr. J. Gange. As stated above, the ALJ relied on Dr. Gange's report to find that the Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. The ALJ also found, based on Dr. Gange's report, that the Plaintiff had mild restrictions in activities of daily living and moderate difficulties in social functioning. However, he rejected Dr. Gange's finding that the Plaintiff had experienced one to two episodes of decompensation of extended duration, on grounds that the psychotic symptoms that led to the Plaintiff's hospitalizations in February and March coincided with significant illicit drug use. The ALJ reasoned that with treatment and abstinence, the Plaintiff showed continued improvement in his symptoms and had not since decompensated. The ALJ thus identified the portions of Dr. Gange's opinion that he adopted and the portion that he did not adopt.

The Plaintiff, however, complains that substantial evidence does not support the ALJ's finding of a correlation between the Plaintiff's increased symptomology and his drug use, as well as a strong correlation between his reduction in serious symptoms and abstinence. While the Court understands how the ALJ could have found this correlation, the ALJ does not point to a single medical source that states that this means that the February and March hospitalization cannot be treated as an episode of decompensation. The ALJ appears to be making his own interpretation of the raw data, which he was not qualified to do.

In a related complaint, the Plaintiff argues that the ALJ treats the improvement of symptoms as if the Plaintiff is "cured" even though no psychologist opinion even indicates a GAF higher than 50, which reflects a person with serious symptoms or any serious impairment

12

in social, occupational, or school functioning. *See Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (Text Revision, 4th ed. 2000). The Defendant counters that the ALJ never indicated that the Plaintiff's severe mental impairment was cured, but merely recognized his improvement. Moreover, the ALJ accounted for the impairment by restricting the Plaintiff to work that involved simple tasks and simple work related decisions, and only occasional interaction with supervisors, co-workers, and the public. This was sufficient, the Defendant asserts, because neither Social Security regulations nor case law requires an ALJ to determine the extent of an individual's disability based entirely on his GAF score. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010).

In reviewing the ALJ's decision, the Court found two instances where the ALJ discussed the Plaintiff's drug use and correlation with his symptoms. Once, as discussed above, he used it to reject Dr. Gange's opinion that the Plaintiff had experienced an episode of decompensation of extended duration. The second time was in the context of concluding that the Plaintiff had a remote history of illegal drug use, which was no longer impacting the Plaintiff's mental functioning. There is substantial evidence in the record to support this conclusion, and the Plaintiff does not argue otherwise. The Plaintiff's arguments about his GAF scores are really an argument about the ALJ's assessment of the severity of the Plaintiff's functional limitations, which brings the Court back to the medical source evidence, particularly the opinion of Dr. Gale.

The ALJ wrote that he did not agree with Dr. Gale's January 2012 medical source statement that indicated "several very significant limitations which would essentially preclude all work." (R. 24.) The reason the ALJ gave for rejecting Dr. Gale's opinion was that the Plaintiff had been reporting an improvement of his symptoms. The ALJ highlights a therapy session

13

where Dr. Gale observed that the Plaintiff was relaxed and did not appear to be experiencing any hallucinations or serious delusions, and another session where he had a largely normal mental status exam. The ALJ also noted that Dr. Gale encouraged the Plaintiff in his job-seeking efforts, and that the Plaintiff believed he could work if given a chance.

The opinion of a treating source that is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is "not inconsistent" with other substantial evidence must be afforded "controlling weight." SSR 96–8p; 20 C.F.R. § 404.1527(d)(2). The ALJ clearly rejected Dr. Gale's opinion as controlling, finding that it was inconsistent with the record of treatment. But this finding is not supported by substantial evidence. The ALJ does not tie the specific limitations identified by Dr. Gale to any conflicting evidence. For example, Dr. Gale indicated that the Plaintiff would not be able to maintain regular attendance, and be punctual within customary, usually strict tolerances, or be able to sustain an ordinary routine without special supervision. The ALJ's observations about the Plaintiff's lack of serious delusions, relaxed demeanor, or appropriate affect are not germane to these limitations, and does not explain why the ALJ rejected Dr. Gale's opinion about these particular restrictions. The ALJ mentioned Dr. Gale's support of the Plaintiff's job-seeking efforts, but there is nothing in the record to suggest that Dr. Gale anticipated full time employment. And while the Plaintiff himself believed he could work, his mental impairment caused him to have very poor insight and judgment. Morever, even if an ALJ finds that the treating source opinion is not entitled to controlling weight, he may not simply reject it. SSR 96–2p. Rather, he must evaluate the opinion's weight by looking at the length, nature and extent of the treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the

14

record as a whole; whether the doctor is a specialist; and "other factors." 20 C.F.R. § 404.1527(d). The ALJ rejected Dr. Gale's opinion, but did not indicate the weight he gave it, or discuss a majority of the relevant factors. This shortcoming requires a remand for further analysis.

Finally, the Plaintiff asserts that the ALJ's RFC assessment was made in error because he did not "properly weigh the evidence of the psychological opinion. In addition to that error, the ALJ makes the problem worse by failing to consider [the Plaintiff's] chronic low back pain and obesity." (Pl.'s Br. 16.) For the reasons discussed above, the Court does not find that the ALJ was required to consider low back pain or obesity in crafting the RFC. There is no evidence in the record that the back pain was caused by anything other than poor posture or that the Plaintiff's weight affected his other impairments or caused any functional limitations of its own. With respect to physical limitations, the ALJ did not ignore "an entire line of evidence" that was contrary to his findings. *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). Rather, the gaps in the logical bridge between the Plaintiff's functional limitations and his RFC appear to be limited to his mental functioning.

## CONCLUSION

For the reasons stated above, the decision of the ALJ is REVERSED and REMANDED for proceedings consistent with this Opinion.

SO ORDERED on June 2, 2015.

s/ Theresa L. Springmann<br>
THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT<br>
FORT WAYNE DIVISION